PER CURIAM.
This is a disciplinary proceeding against a member of The Florida Bar, Karl H. Moskowitz. No request to be heard by this Court has been tendered by Mr. Mos-kowitz.
Two complaints were filed against Mos-kowitz. The first charged him with endorsing a client’s name to an insurance company draft and appropriating the proceeds to his own use. The second charged him with failing to account for and deliver trust funds.
The client who made the first complaint, Mrs. Mildred Schalf, testified that Moskow-itz had handled a workmen’s compensation matter for her in the spring of 1968. It resulted in an award of $900 for her and $300 in attorney’s fees for Moskowitz. After the hearing, Moskowitz told Mrs. Schalf that she would receive her check in about a week. The carrier issued two checks, one made payable to Mildred Schalf in the amount of $900 and the other payable to Karl H. Moskowitz in the amount of $300. Both were mailed to Moskowitz.
Ten days after the hearing she had not received her $900 and Mrs. Schalf called Moskowitz. He said the check had been issued and he would bring the money to her. He brought her his personal check in the amount of $900. Mrs. Schalf accepted the check and endorsed it to a third party who attempted to deposit it. The check was returned to Mrs. Schalf marked “Insufficient Funds.” Mrs. Schalf called Moskowitz, who again responded and tried to get her to accept another check. She refused to accept anything but cash, which he gave her.
The reverse side of Mrs. Schalf’s check from the carrier contains two endorsements, “Mildred Schalf” and “Karl H. Moskowitz, attorney,” with the notation “Deposit to account of Karl H. Mosko-witz.” Mrs. Schalf testified that she had not endorsed the check and she had not authorized its endorsement.
At a proceeding on March 12, 1969, Moskowitz appeared before the Grievance Committee, and testified in the Schalf matter. At this hearing Moskowitz said that he and Mrs. Schalf:
“[H]ad a very close personal relationship and we know each other very intimately. This transaction was no more different than any other transaction I handled for her in the past. I always had blanket authority to act in any way I wanted. There never was anything other than above-board about any transaction. I think if I took the check — I don’t know. I would like to see that check that is involved on the Workmen’s Compensation case. I would like to see that to refresh my memory.”
Later in his testimony, however, he admitted depositing the check drawn to the order of Mrs. Schalf. He said:
“I had, in the past, occasion to borrow money in business deals with Mrs. Schalf, and which I paid her back. From time to time, when I was short she would lend me money. Our relationship —from my best recollection, I told her that I would have — I would like to use that money for a few days. And I am positive that is the basis of why I put the draft into my account as a deposit and, subsequently, I gave her my check for $900, a few days afterwards.”
Mrs. Schalf then said that while she had loaned Mr. Moskowitz money in the past, he had not been prompt in repaying her and she would have refused had he asked to borrow the $900. Moskowitz admitted *586 that his personal check to Mrs. Schalf was returned because of insufficient funds, however he said that was because:
“It was a new account. There were several drafts in there. The bank didn’t know me.”
The second complaint was brought by Evelio Marti, who had employed Mosko-witz as his attorney in a real estate transaction in which Marti was selling property. The buyer deposited a $3800 check in escrow with Moskowitz, who placed the check in his account. At the closing, Mos-kowitz gave Marti an unsigned check for that amount. Marti deposited it in his bank, however it was returned to him because of the lack of signature. Marti’s brother-in-law took the check to Mosko-witz, who signed it. The check was redeposited, but was again returned to Marti, this time marked “insufficient funds.” Marti called Moskowitz, who told his client to come to his office at noon the following day to receive cash.
According to the testimony of Marti and Elanio Armesto-Garcia, a friend of Marti’s Armesto-Garcia, Marti, and Luis Marti, his brother, went to Moskowitz’s office at 11:50 a. m. It was locked. They waited outside until 2:00 p. m; Moskowitz never appeared. At the time Marti’s testimony was taken, six months later, he had not seen Moskowitz and had not received his $3800. A further attempt to deposit the check was unsuccessful; it was returned with the notation that the account was closed.
On December 29, 1969, Moskowitz was present at a bar hearing on the Marti matter. He testified that he was unaware that the check was unsigned at the time he gave it to Marti. He also stated that on the date it was written, October 16, 1969, he had enough money in his account to cover it. The Riverside Bank statement of account enclosed as a bar exhibit, however, shows a balance of only $2,227.57 on that date. Moskowitz further testified that he was in his office on December 19, 1969, but that Marti never arrived. He said he was still waiting to give Marti the cash.
Because Moskowitz said that he was either ill or in the process of obtaining an attorney, the date for the final hearing was postponed three times. A Motion for Further Continuance was scheduled to be heard June 4, 1970; Moskowitz did not appear. On that date Moskowitz appeared at the offices of The Florida Bar and stated “that he would never appear at this trial or any other trials that The Florida Bar would conduct against him.”
Following the June 10, 1970, hearing, at which Moskowitz did not appear, the Referee found that:
“1. Respondent endorsed the name of Mildred Schalf to the draft of Consolidated Mutual Insurance Company; that respondent had no right, authority or interest in said draft as to empower, approve or ratify said endorsement.
“2. Respondent deposited the proceeds of said Schalf draft in his personal account and misused said proceeds.
“3. Respondent has misused trust funds of Evilio Marti in the amount of $3800 and has failed to repay or account for such funds to said Evilio Marti.”
The Referee recommended that Mosko-witz be found guilty, be disbarred and be ordered to pay the cost of the proceedings.
We have carefully reviewed the record, including the report of the Referee, and we agree with his findings. It is, therefore, adjudged that Respondent, Karl H. Mos-kowitz, a member of The Florida Bar, be and he hereby is disbarred from the practice of law in Floirda. Respondent is to bear the costs of these proceedings in the amount of $409.50.
It is so ordered.
ERVIN, Acting C. J., and CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.